**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

UFO CHUTING OF HAWAII, INC., a Hawaii corporation; K.M.B.S., INC., a Hawaii corporation d/b/a Kaanapali Tours,
    *Plaintiffs-Appellants,*

v.

ALLAN A. SMITH, in his capacity as Chair of the Board of Land and Natural Resources, State of Hawaii, and Acting Director of the Department of Land and Natural Resources, State of Hawaii; STEPHEN THOMPSON; ED UNDERWOOD, in his capacity as Administrator, Division of Boating and Ocean Recreation, Department of Land and Natural Resources, State of Hawaii,*
    *Defendants-Appellees,*

UNITED STATES DEPARTMENT OF COMMERCE; NATIONAL MARINE FISHERIES SERVICE,
    *Defendants-Intervenors-Appellees.*

No. 05-16545

D.C. No. CV-03-00651-SOM

OPINION

---

*Pursuant to Fed. R. App. P. 43(c)(2), Allan A. Smith is substituted for Peter T. Young as Acting Chair of the Board of Land and Natural Resources and Director of the Department of Land and Natural Resources, State of Hawaii; Ed Underwood is substituted for Richard Rice as Administrator, Division of Boating and Ocean Recreation, Department of Land and Natural Resources.

15277

15278         UFO CHUTING OF HAWAII v. SMITH

Appeal from the United States District Court
for the District of Hawaii
Susan Oki Mollway, District Judge, Presiding

Argued and Submitted
June 6, 2007—Honolulu, Hawaii

Filed November 28, 2007

Before: David R. Thompson, Marsha S. Berzon, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

## SUMMARY

### Government Law/Preemptions

The court of appeals affirmed a judgment of the district court. The court held that Hawaii's ban on parasailing when humpback whales are mating did not completely exclude federal licenses or actually conflict with federal law.

Appellants including UFO Chuting of Hawaii, Inc., a commercial parasailing business, sued appellees including the state of Hawaii in district court, challenging the state's five-month ban on parasailing when humpback whales are mating. The district court initially granted summary judgment to UFO, reasoning that the federal Marine Mammal Protection Act (MMPA) preempted Hawaii state law. The court granted UFO's motion for a permanent injunction barring enforcement of the parasailing provision. However, the court later vacated its judgment and entered summary judgment in favor of the state after the enactment of the federal 2005 Omnibus Appropriations Bill, which allowed Hawaii to regulate its waters for conservation and management of humpback

whales. The court rejected UFO's claims that the MMPA preempted state law, and that its right to engage in coastwise trade under federal license preempted the parasailing restriction (as well as other Commerce Clause claims). The court denied UFO's motion for attorney fees, reasoning that UFO was not the prevailing party because the permanent injunction never went into effect.

UFO appealed.

[1] An actual conflict occurs where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. [2] No state may completely exclude federally licensed commerce. However, a state may impose upon federal licensees reasonable, nondiscriminatory conservation and environmental protection measures otherwise within their police power.

[3] Hawaii's ban on parasailing was in effect only for five months of the year. The state did not completely exclude UFO from engaging in coastwise trade in the relevant waters. [4] UFO could not show that the Hawaii regulation was in actual conflict with the federal law. By enacting the Omnibus Bill, Congress permitted the state to regulate the operation of commercial vessels for the purpose of protecting humpback whales, suggesting that Congress meant the Hawaii legislation protecting humpback whales to continue in force. [5] It had to be held that Hawaii's regulation did not completely exclude federal licenses or actually conflict with federal law.

[6] So long as it is not in conflict with federal law, states may impose upon federal licensees reasonable, nondiscriminatory conservation and environmental protection measures otherwise within their police power. [7] The Hawaii legislature found that the operation of parasailing vessels caused underwater noise that displaced whales from their favorite breeding grounds, disrupting mating behavior and threatening

the survival of calves. Because the parasailing ban furthered the legitimate governmental purpose of protecting humpback whales, it had to be held that the statute was reasonable.

[8] The Commerce Clause forbids discrimination against interstate commerce. [9] A facially neutral statute may violate the Commerce Clause if the burdens of the statute so outweigh the putative benefits as to make the statute unreasonable or irrational. [10] The Hawaii ban on parasailing was facially neutral and the benefits of the statute were not illusory and did not indicate favoritism to in-state industries. By banning parasailing during the time of year in which humpback whales inhabited the waters, the legislature advanced its legitimate purpose of protecting the endangered species. Thus, it had to be held that the parasailing ban was nondiscriminatory and did not impose an unreasonable burden on interstate commerce.

[11] A party is a "prevailing party" for purposes of an award of attorney fees under 42 U.S.C. § 1988 when (1) it wins on the merits of its claim, (2) the relief received materially alters the legal relationship between the parties by modifying the defendant's behavior, and (3) that relief directly benefits the plaintiff. [12] UFO did not receive a direct benefit. Because the district court stayed the implementation of the permanent injunction before the state had to change its behavior, UFO could not be considered the prevailing party. The judgment of the district court had to be affirmed.

## COUNSEL

Dennis Niles, Paul, Johnson, Park & Niles, Wailuku, Hawaii, for the plaintiffs-appellants.

William J. Wynhoff, Deputy Attorney General, Department of the Attorney General, State of Hawaii, Honolulu, Hawaii, for the defendants-appellees.

## OPINION

TALLMAN, Circuit Judge:

UFO Chuting of Hawaii, Inc. and K.M.B.S., Inc. (collectively "UFO") appeal the district court's summary judgment in favor of Defendants, the State of Hawaii and the United States as Intervenor (collectively "State"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm. We hold that UFO's right to operate vessels under its federal maritime coasting licenses does not preempt Hawaii law prohibiting parasailing off the coast of Maui during limited portions of the year to protect mating humpback whales. Because UFO does not qualify as a "prevailing party," the district court did not abuse its discretion in denying UFO's motion for attorney's fees.

I

UFO operates a commercial parasailing business offering parasailing excursions to adventure seekers off the coast of Maui and the Big Island of Hawaii. Parasailing is an "activity in which an individual is transported or carried aloft by a parachute, sail, or other material attached to a towline which is towed by a vessel." Haw. Code R. § 13-250-5. The United States Coast Guard inspects and licenses UFO's two vessels —the M/V UFO and the M/V Casey Ann—to carry up to twelve passengers in the "coastwise" trade between McGregor Point and Lipoa Point on the western coast of Maui. A portion of this area is located within the "Maui Humpback Whale Protected Waters." *See* Haw. Code R. § 13-256-112.

Between December 15 and May 15 of each year, when humpback whales are mating, bearing calves, and caring for their young, Hawaii state law prohibits any person from "operat[ing] a thrill craft, or engag[ing] in parasailing, water sledding, or commercial high speed boating, or operat[ing] a motor vessel towing a person engaged in water sledding or

parasailing on the west and south shore of Maui." Haw. Rev. Stat. § 200-37(i). Together with Hawaii Revised Statute § 200-38(c), state law, in effect, prohibits parasailing activity in all navigable waters surrounding Maui between December 15 and May 15 of each year.

On July 9, 2004, the United States District Court for the District of Hawaii granted UFO's motion for summary judgment on the basis that the federal Marine Mammal Protection Act ("MMPA") preempted Hawaii state law. *See UFO Chuting of Haw., Inc. v. Young*, 327 F. Supp. 2d 1220 (D. Haw. 2004).[1] The district court granted UFO's motion for a permanent injunction barring enforcement of the parasailing provision on September 29, 2004. The State appealed.

Subsequent to the district court's published decision, President George W. Bush signed into law the Fiscal Year 2005 Omnibus Appropriations Bill, Pub. L. No. 108-447, § 213, 118 Stat. 2809 (2004) ("Omnibus Bill"). Section 213 of the Omnibus Bill provides:

> [N]othwithstanding any other Federal law related to the conservation and management of marine mammals, the State of Hawaii may enforce any State law or regulation with respect to the operation in State waters of recreational and commercial vessels, for the purpose of conservation and management of humpback whales, to the extent that such law or regulation is no less restrictive than Federal law.

---

[1] In its ruling, the district court reasoned that the MMPA expressly preempted the parasailing provision by prohibiting the State from enforcing, or attempting to enforce, any state law related to the taking of marine mammals within Hawaii. *UFO Chuting of Haw., Inc.*, 327 F. Supp. 2d at 1222-23 (discussing the implications of 16 U.S.C. § 1379(a)). As an alternative holding, the district court concluded that the parasailing provision actually conflicted with a substantive right granted by the MMPA, allowing vessels to come within 100 yards of humpback whales. *Id.* at 1229-30 (discussing Pub. L. No. 103-238, 1994 Stat. 1636).

Case 1:03-cv-00651-SOM-BMK   Document 147-2   Filed 03/03/2008   Page 7 of 18

UFO CHUTING OF HAWAII v. SMITH            15283

A day later, the State filed a motion to stay the permanent injunction and asked the district court to indicate whether it would entertain a motion under Federal Rule of Civil Procedure 60(b) should we issue a remand order. On December 13, 2004, before the injunction went into effect, the district court indicated that it would grant a Rule 60(b) motion because of the intervening change in the law. The district court also granted the State's motion to stay the permanent injunction. We issued a limited remand on January 10, 2005, and the district court granted the State's Rule 60(b) motion on March 31, 2005. The district court then vacated its prior judgment and entered summary judgment in favor of the State. However, because the district court failed to address UFO's Commerce Clause arguments, it granted UFO's motion for reconsideration on May 5, 2005, and issued an amended order granting summary judgment in favor of the State, now rejecting UFO's claim that the MMPA preempted state law. On July 7, 2005, the district court granted the State's motion for summary judgment on all remaining issues, rejecting UFO's last claim that its right to engage in coastwise trade under federal license preempts the parasailing restriction (as well as other Commerce Clause claims). *See UFO Chuting of Haw., Inc. v. Young*, 380 F. Supp. 2d 1160 (D. Haw. 2005).

The district court then denied UFO's motion for attorney's fees, costs and expenses. The court reasoned that UFO was not the "prevailing party" because the permanent injunction never went into effect. Consequently, UFO never received a direct benefit from the temporary relief granted by the court. UFO timely appeals both rulings.

## II

We review de novo the district court's grant of summary judgment. *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007). We view the facts in the light most favorable to UFO and draw all reasonable inferences in its favor. *Id.* at 825-26.

### A

[1] UFO contends that its Coast Guard license—authorizing it to carry up to twelve passengers in coastwise trade—preempts Hawaii's ban on parasailing because the license grants UFO a federal right of maritime passage that actually conflicts with Hawaii's seasonal ban. *See Young v. Coloma-Agaran*, 340 F.3d 1053, 1055 (9th Cir. 2003) (describing the three ways federal law may preempt state law, including when state law actually conflicts with federal law). An actual conflict "occurs 'where it is impossible . . . to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Id.* at 1055-56 (alteration in original) (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)).

[2] "[N]o State may completely exclude federally licensed commerce." *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142 (1963); *Young*, 340 F.3d at 1056. However, a state " 'may impose upon federal licensees reasonable, nondiscriminatory conservation and environmental protection measures otherwise within their police power.' " *Young*, 340 F.3d at 1056 (quoting *Douglas v. Seacoast Prods., Inc.*, 431 U.S. 265, 277 (1977)); *see also Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 448 (1960) (stating that so long as the federal law does not preempt state action, a state or local regulation "requires no more than compliance with an *orderly* and *reasonable* scheme of community regulation" (emphasis added)); *id.* at 443 ("Evenhanded local regulation to effectuate a legitimate local public interest is valid unless pre-empted by federal action . . . .").

UFO argues that conflict preemption occurs "where state law has the effect of precluding employment of a vessel for the single purpose for which it was designed, constructed and licensed." In other words, because its two vessels were designed for parasailing, UFO contends that Hawaii cannot

ban parasailing on the navigable waters in which its federal license authorizes it to engage in coastwise trade. For support, UFO cites *Young*, 340 F.3d 1053, and *Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316 (4th Cir. 2001).

In *Young*, the state of Hawaii banned all commercial vessels from the Hanalei River or Hanalei Bay ocean waters at all times of the year. 340 F.3d at 1055 (discussing Haw. Code R. § 13-256-36). The plaintiffs operated commercial tour boats and held a federal license from the Coast Guard authorizing them to engage in coastwise trade. *Id.* The court agreed with the district court and concluded that the plaintiffs' federal license to engage in coastwise trade preempted the Hawaii rule. The plaintiffs' coasting license authorized them to engage in coastwise trade, which "includes the transportation of passengers." *Id.* (citing *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 214-15 (1824); *see also id.* ("[A] coasting license 'entitles a vessel to employment in unrestricted coastwise trade.' " (quoting 46 C.F.R. § 67.19(a))). Therefore, because Hawaii law "completely exclude[d] the plaintiffs from conducting their federally-licensed tour boat business" at all times, it "effectively rendered it impossible for the plaintiffs to comply with both federal and state law in order to ply their trade." *Id.* at 1057.[2] Thus, federal law preempted state law and, because there was an actual conflict, we declined to determine whether the State had properly exercised its concurrent power to alleviate user conflicts. *Id.*

[3] Here, in contrast to *Young*, the ban on parasailing is only in effect for five months of the year. The Hawaii statute undoubtedly imposes a significant restriction on the ability of

---

[2]The Hawaii Rule authorized two commercial use permits for kayaks to operate in the same area. *Id.* Although the court did not address this portion of the regulation in *Young*, the small exception for kayaks does not undermine the court's conclusion that this was a complete ban. The kayak exception did not apply to the plaintiffs—who operated commercial tour boats—and thus, as applied to their commercial tour boats, the Hawaii Rule resulted in a complete ban.

UFO to ply its trade, but the State has not "completely excluded" UFO from engaging in coastwise trade in the relevant waters as it did with the year-round ban in *Young*.[3] Moreover, UFO has presented no evidence that it is wholly economically infeasible to operate its business with the five-month ban, and has therefore not shown that it cannot "comply with both federal and state law in order to ply [its] trade."[4] *Id.* at 1057.

[4] Nor can UFO show that the Hawaii regulation is in actual conflict with the federal law because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Young*, 340 F.3d at 1055-56. By enacting section 213 of the Omnibus Bill, Congress permitted the State of Hawaii to regulate the operation of commercial vessels for the purpose of protecting humpback whales. Although the Omnibus Bill does not address the preemptive effect of federal Coast Guard licenses, it nonetheless suggests that Congress meant the Hawaii legislation protect-

---

[3] UFO relies heavily on a Fourth Circuit case, *Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316 (4th Cir. 2001), in which the court held that a Virginia law prohibiting "commercial transport of hazardous or nonhazardous solid waste . . . by ship, barge or other vessel upon" certain navigable waters was preempted by the plaintiffs' federal licenses. *Id.* at 323. The reasoning of *Waste Management* is, however, unclear. The court first mentions that the ban on "hazardous waste transport" constituted complete exclusion, but then goes on to state that the regulation was not reasonable. *Id.* at 348. It may be that the district court in this case was correct in concluding that the Fourth Circuit would not have conducted the reasonableness inquiry had it really thought there was a complete exclusion. Given that the case was decided at least in part on the ground that the regulation was unreasonable, we do not find its holding with regard to complete exclusion particularly illuminating.

[4] We recognize that there may be a point at which a seasonal ban such as this makes it impossible for a federal licensee to ply its trade. In this instance, UFO cannot conduct its parasailing business for five months out of the year. A longer ban or a ban on a different type of maritime business could result in such an economic impact to the licensee as to make operation of its business wholly infeasible. That is not the case here, and we save for another day the question whether such an impact would lead to preemption of a state regulation.

ing humpback whales to continue in force, despite a known impact on parasailing and similar commercial boating activity. We are thus especially reluctant to find a conflict with federal purposes here.

[5] We therefore hold that Hawaii's regulation does not completely exclude federal licenses or actually conflict with federal law.

**B**

**1**

[6] In *Douglas*, the Supreme Court made clear that, so long as it is not in conflict with federal law, "[s]tates may impose upon federal licensees reasonable, nondiscriminatory conservation and environmental protection measures otherwise within their police power." 431 U.S. at 277; *see also Huron Portland Cement Co.*, 362 U.S. at 447 (stating that possessing a federal license does not immunize the licensee from lawful exercises of the state's police power). Having examined the proffered reasons for the Hawaii law, we hold that the parasailing ban is a reasonable regulation of federal licenses.

The parties dispute the level of deference the court should give the legislature in reviewing a statute for reasonableness that is not in actual conflict with federal law. The State contends that we should apply rational basis review, while UFO argues for a higher level of scrutiny. UFO contends that it "[i]s the State's burden to show [that] the [parasailing ban] sweeps no broader than necessary to achieve its putative purpose." In support, UFO cites *United States v. Locke*, 529 U.S. 89 (2000), for the proposition that, "[i]n the field of coastwise navigation, state legislation of this stripe is not presumed reasonable."

UFO misconstrues *Locke*. Although the Court did hold that there is no assumption of nonpreemption when there is a "his-

tory of significant federal presence," *id.* at 108, the Court was referring to field preemption—in which Congress leaves no room for state regulation—not conflict preemption, in which the question is whether compliance with both state and federal law is possible, *id.* at 108-110. In other words, when states have traditionally occupied the field, an assumption of non-preemption still exists. *Id.* at 110.

Neither *Huron* nor *Douglas* defines "reasonable" in the context of conflict preemption; nevertheless, it is clear that when an exercise of police power does not affect a fundamental right, courts apply the same rational basis analysis employed in equal protection inquiries. *Id.* at 319-20; *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). Therefore, UFO had the burden to negate any conceivably legitimate reason the State may have had in enacting the parasailing ban. *See Heller*, 509 U.S. at 319-20.[5] UFO failed to meet its burden.

To support the enactment of the parasailing ban, the Hawaii legislature found that "[t]he operation of thrill craft, parasailing vessels, and high-speed motorized vessels during certain times of the year poses an unacceptable risk of harm to endangered sea creatures such as migratory humpback whales and sea turtles." H.B. 2994, 1990 Haw. Sess. Laws 972. The legislature elaborated further on the impact to humpback whales, stating:

> The legislature declares that the waters of the State should be safe from the dangers of thrill craft, parasailing vessels, and high-speed motorized vessels during the annual migration of humpback whales to

---

[5]Under this standard, the issue is not whether there is a viable alternative use of UFO's tow boats, but whether the ban is reasonably related to a legitimate government interest. Because UFO has failed to raise a genuine issue of material fact regarding the reasonableness of this statute, the district court properly granted summary judgment to the State.

Hawaii especially in Maui waters identified as critical habitats for endangered humpback whales. Humpback whales are very acoustically oriented mammals. Continuous traffic and constant underwater noise created by thrill craft, parasailing vessels, and high-speed motorized vessels in near shore, shallow waters threaten humpback whale population recovery by displacing the whales from their favored habitat and further by disrupting the acoustic environment, creating an energetic cost to the whales in responses to these disturbances, disrupting the species' mating system, and threatening the survival of calves.

*Id.*[6]

[7] UFO disputes this legislative finding, arguing that "[i]ntuitively, at least, a 28-foot vessel whose passengers are engaged in whale watching would seem to pose a greater risk of impacting a whale than an identical boat towing a parasailor whose operator is intent on staying clear of the whales." However, it is not our function to question the legislature's intuition. *See Heller*, 509 U.S. at 319.[7] Moreover, it is not the "whale watching" activity that poses a threat to the whale. Rather, high speed traffic causes underwater noise. This dis-

---

[6] Marine biologists Mark Ferrari and Deborah Glockner testified before the Hawaii legislature in 1990 regarding the disturbance caused by parasailing. They testified that "there is no question that the activities of parasailing and thrill craft operations have definitely displaced resting mothers and their newborn calves away from their preferred nearshore habitat." "Any high speed activity such as parasailing . . . and their related activities, produce both a point disturbance at the surface of the water, as well as an acoustic disturbance (noise pollution) underwater."

[7] UFO's argument that the district court had a duty to determine whether the evidence presented to the legislature met the standards set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), was rejected by this court in *Gammoh v. City of La Habra*, 395 F.3d 1114, 1126 & n.5 (9th Cir. 2005).

15290   UFO CHUTING OF HAWAII v. SMITH

turbance displaces whales from their favorite breeding grounds, disrupting mating behavior and threatening the survival of calves. Because the parasailing ban furthers the legitimate governmental purpose of protecting humpback whales, we hold that the statute is reasonable.

2

As the State notes in its brief, the Supreme Court has not clearly defined what constitutes "nondiscriminatory" state regulation of a federal licensee or the standards a reviewing court should apply. However, given its statements in *Douglas*, we can infer that the Court sought to incorporate the same standards of "nondiscriminatory" as it has applied in the context of the Commerce Clause.

[8] The Commerce Clause forbids discrimination against interstate commerce. *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 983 (9th Cir. 1991) (per curiam). In *Douglas*—a case discussing when states can impose regulations on federal licensees—the Court discussed discrimination in the context of the Commerce Clause. *See Douglas*, 431 U.S. at 277 (stating that, in *Gibbons*, the Court struck down a state statute that "allowed some steam vessels to ply their trade while excluding others that were federally licensed"); *id.* (discussing *Manchester v. Massachusetts*, 139 U.S. 240 (1981), in which the Court held that a state statute that "makes no discrimination in favor of citizens of Massachusetts and against citizens of other States . . . may well be considered as an impartial and reasonable regulation").

[9] A facially neutral statute may violate the Commerce Clause if "the burdens of the statute . . . so outweigh the putative benefits as to make the statute unreasonable or irrational." *Alaska Airlines Inc.*, 951 F.2d at 983. A statute is unreasonable or irrational when "the asserted benefits of the statute are in fact illusory or relate to goals that evidence an impermissible favoritism of in-state industry over out-of-state industry."

*Id.*; *see, e.g.*, *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 353-54 (1977) (overturning a facially neutral statute that ultimately discriminated against out-of-state commerce); *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 144-46 (1970) (overturning an Arizona statute that prohibited local melon growers from shipping their produce to California for packing because the admitted purpose was to favor Arizona growers by requiring superior quality growers to have their produce packaged in Arizona).

[10] The Hawaii ban on parasailing is facially neutral. It does not differentiate between residents and nonresidents, or residents and non-citizens. Moreover, the benefits of the statute are not illusory, nor do they indicate favoritism to in-state industries. The purpose of the parasailing ban is to protect human safety and the environment. The legislature received evidence that noise caused by thrill craft and parasailing vessels disrupts the natural behavior of migratory humpback whales. By banning parasailing and thrill craft activity during the time of year in which humpback whales inhabit the waters off Maui, the legislature advanced its legitimate purpose of protecting the endangered species. Thus, we hold that the parasailing ban is nondiscriminatory and does not impose an unreasonable burden on interstate commerce.

### III

[11] We review for an abuse of discretion a district court's determination of attorney's fees under 42 U.S.C. § 1988. *Martinez v. Wilson*, 32 F.3d 1415, 1421-22 (9th Cir. 1994). A party is a "prevailing party" when "(1) it wins on the merits of its claim, (2) the relief received materially alters the legal relationship between the parties by modifying the defendant's behavior, and (3) that relief directly benefits the plaintiff." *Id.* at 1422.

A final judgment on the merits is not a condition precedent to obtaining the status of a "prevailing party." *Hanrahan v.*

*Hampton*, 446 U.S. 754, 756-57 (1980) (per curiam) ("The legislative history of [42 U.S.C. § 1988] indicates that a person may in some circumstances be a 'prevailing party' without having obtained a favorable 'final judgment following a full trial on the merits.' " (quoting H.R. Rep. No. 94-1558, at 7 (1976)). A party has "prevailed on the merits of at least some of (their) claims," *id.* at 758, when it has obtained a preliminary injunction that results in a direct and substantial benefit. *Williams v. Alioto*, 625 F.2d 845, 847 (9th Cir. 1980) (per curiam); *see also Dahlem v. Bd. of Educ. of Denver Public Schs.*, 901 F.2d 1508, 1512 (10th Cir. 1990) ("Such relief on the merits may fall short of a formal judgment so long as it works a material alteration of the substantial rights of the parties." (internal quotation marks and citations omitted)); *Grano v. Barry*, 783 F.2d 1104, 1109 (D.C. Cir. 1986). Therefore, when "a party . . . achieves the objective of its suit by means of an injunction issued by the district court[, it] is a prevailing party in that court, notwithstanding the fact that the case becomes moot, through no acquiescence by the defendant, while the order is on appeal." *Dahlem*, 901 F.2d at 1512.[8]

---

[8]This rationale is consistent with the Supreme Court's decision in *Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990). There, the plaintiff sought declaratory and injunctive relief ordering the Florida Department of Banking and Finance to process its application to operate an industrial savings bank in Florida. *Id.* at 475. After the district court granted the plaintiff's motion for summary judgment, but before the Department of Banking and Finance processed the application or the Eleventh Circuit ruled on the merits of the appeal, the State of Florida amended its statutes, which mooted the litigation. *Id.* The Court held that, "[s]ince the judgment below is vacated on the basis of an event that mooted the controversy before the Court of Appeals' judgment issued, Continental was not, at that stage, a 'prevailing party' as it must be to recover fees under § 1988." *Id.* at 483. In doing so, the Court did not hold that a party automatically loses its prevailing party status when the appeal becomes moot before a Court of Appeals reaches final judgment. *See id.* ("Whether [the plaintiff] can be deemed a 'prevailing party' in the district court, even though its judgment was mooted after being rendered but before the losing party could challenge its validity on appeal, is a question of some difficulty, *see, e.g., Palmer v. Chicago*, 806 F.2d 1316, 1321 (7th Cir. 1986)[,] . . . [that w]e

UFO CHUTING OF HAWAII v. SMITH                15293

Having concluded that the subsequent statutory change did not undermine UFO's status as a prevailing party, we turn now to the question of whether UFO received a direct and substantial benefit from its initial award of a permanent injunction. The entry of judgment in a party's favor does not automatically render that party a "prevailing party" under § 1988. *Rhodes v. Stewart*, 488 U.S. 1, 3 (1988) (per curiam). The judgment is not the end but a means to receiving some redress from the defendant. *Id.* To be considered a "prevailing party," the plaintiff must show that the judgment somehow affected the behavior of the defendant towards the plaintiff. *Id.* at 4; *see also id.* at 3-4 ("At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, *or the termination of some conduct.*" (emphasis added)).

For instance, in *Williams*, the plaintiffs obtained a preliminary injunction against "pat-down" searches conducted via a special investigative procedure known as "Operation Zebra." 625 F.2d at 847. Before we could rule on the merits of the preliminary injunction, Operation Zebra ended, mooting the issue. We nonetheless upheld the plaintiffs' status as a prevailing party, stating, "[o]ur previous dismissal of the appeal as moot and vacation of the district court judgment d[id] not affect the fact that for the pertinent time period appellees obtained the desired relief." *Id.* at 847-48. In other words, because the plaintiffs obtained the relief they sought—a preliminary injunction preventing the appellants from continued enforcement of "Operation Zebra"—they received a direct benefit and qualified as a "prevailing party." *Id.*

---

decline to resolve . . . ."). Rather, the Court reaffirmed established case law requiring a prevailing party to obtain a direct and substantial benefit. Because the plaintiff in *Lewis* never received the benefit it sought—the right to apply to the Florida agency—it lost its status as the prevailing party.

[12] In comparison to *Williams*, UFO did not receive a direct benefit. The permanent injunction was not the end; rather, it was a means to achieving the end. *Rhodes*, 488 U.S. at 3. Because the district court stayed the implementation of the permanent injunction before the State had to change its behavior—before Hawaii stopped enforcing its parasailing ban—UFO cannot be considered the "prevailing party."

## IV

Hawaii's reasonable and nondiscriminatory seasonal ban on parasailing off the coast of Maui does not completely exclude UFO from using its federal license. Entry of summary judgment in favor of the State of Hawaii was proper. Because the district court stayed its permanent injunction before UFO received a direct benefit, UFO is not a "prevailing party" under 42 U.S.C. § 1988. The district court therefore did not abuse its discretion in denying UFO's request for attorney's fees.

**AFFIRMED.**